IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WENDELL MALLETT,<br><br>Defendant. | Case No. CR11-2017<br><br>ORDER FOR PRETRIAL<br>DETENTION |

On the 24th day of March, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Anthony Russell Morfitt. The Defendant appeared personally and was represented by his attorney, Michael Lanigan.

## RELEVANT FACTS

On March 8, 2011, Defendant Wendell Mallett was charged by Indictment (docket number 2) with being a felon in possession of a firearm. Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on May 23, 2011.

Black Hawk County Deputy Sheriff David Hinz testified regarding the circumstances underlying the instant charge. On September 11, 2010, Deputy Hinz assisted another Black Hawk County Deputy Sheriff with a traffic stop. Defendant was a passenger in the vehicle that was stopped.[1]

In speaking with the driver of the stopped vehicle, she told the deputies that Defendant had a firearm in his vehicle, which was parked at her apartment. Before leaving her apartment in her vehicle, the driver and Defendant were going to take

---

[1] The vehicle was stopped for a headlight violation and a license plate violation.

1

Defendant's vehicle, but when the driver entered Defendant's vehicle, she struck something under the front passenger seat. The driver asked Defendant if he had a gun under the passenger seat. Defendant removed a handgun from under the passenger seat, and then placed it under the driver's seat. The driver decided to take her vehicle because she was uncomfortable riding in a vehicle with a firearm.

The deputies went to the driver's apartment. Defendant's vehicle was registered to Defendant and Linda Larue. Deputy Hinz looked in the front seat area of Defendant's vehicle and saw the tip of a gun barrel under the driver's seat. Deputy Hinz retrieved the gun from under the driver's seat. Another deputy interviewed Defendant, and Defendant admitted knowing that the gun was under the driver's seat.

According to the pretrial services report, Defendant is 28 years old. He was born and raised in Waterloo, Iowa. Defendant is single and has never been married. He has four children from two prior relationships.

Since October 2010, Defendant has been employed at Pella Windows and Doors through Sedona Staffing, a temporary employment company in Waterloo. Prior to working at Pella Windows and Doors, from November 2009 to October 2010, Defendant was employed as a front desk clerk at the Ramada Inn in Waterloo.

Defendant is in good physical health. He has no past or present mental health or emotional concerns. Defendant reported abusing alcohol in the past, with his last instance of heavy alcohol consumption in September 2010. Defendant denied using marijuana in the past ten years, but reported using marijuana on a regular basis when he was a teenager. He also denied ever using cocaine, but in June 2006, Defendant provided a urine specimen that tested positive for cocaine.

On May 26, 1998, Defendant was charged with first degree burglary and aiding and abetting fourth degree theft. He was adjudicated delinquent, and on October 28, 1998,

Defendant was placed at the Forest Ridge Youth Center.[2] On August 2, 1999, Defendant was placed at the Woodward Academy Community Residential Program. On May 10, 2000, Defendant was placed at the Wittenmyer Youth Center/SUMMIT Program. He was discharged from supervision on August 8, 2000.

On October 6, 2000, Defendant was charged and later convicted of third degree burglary. On March 30, 2001, Defendant was sentenced to 5 years in prison, which were suspended, and 5 years probation. On January 3, 2002, his probation was modified to include 1 year in a residential facility. On September 2, 2004, he was placed on work release. On October 10, 2004, while on work release, Defendant escaped, and an arrest warrant was issued. The warrant was served on January 25, 2005, and Defendant was returned to prison. He was paroled on May 12, 2006. On August 31, 2006, Defendant absconded from parole, and an arrest warrant was issued. The warrant was served on September 2, 2006. His parole was revoked on December 18, 2006. Defendant was paroled on January 5, 2010.

On March 29, 2001, while on release on bond in the third degree burglary case, and one day before sentencing in that case, Defendant was charged and later convicted of third degree theft. On August 7, 2001, Defendant was sentenced to 180 days in jail with 156 days suspended, and 2 years probation. On January 3, 2002, his probation was modified to include 1 year in a residential facility. On October 7, 2002, Defendant's probation was revoked, and he was sentenced to 180 days in jail. His sentence was discharged on September 23, 2003.

On May 20, 2001, while on release on bond in the October 2000 third degree burglary case, Defendant was charged and later convicted of third degree burglary.[3] On

---

[2] On October 22, 1998, six days before being placed at the Forest Ridge Youth Center, Defendant was charged with fifth degree theft. The disposition of that case is unknown.

[3] While Defendant was charged in this matter on May 20, 2001, the offense occurred on October 26, 2000.

3

December 2, 2001, Defendant failed to appear for sentencing, and an arrest warrant was issued. The warrant was served on December 24, 2001, and on January 3, 2002, Defendant was sentenced to 5 years in prison, which were suspended, and 5 years probation, including 1 year in a residential facility.

On September 23, 2001, while on probation in the October 2000 third degree burglary case and the March 2001 third degree theft case, and while on release on bond in the May 2001 third degree burglary case, Defendant was charged and later convicted of disorderly conduct.

On June 27, 2002, while on probation in the 2000 and 2001 third degree burglary cases and the 2001 third degree theft case, Defendant was charged and later convicted in two counts of possession of a firearm as a felon and carrying weapons. On October 7, 2002, Defendant was sentenced to 5 years in prison on the felon in possession of a firearm charge, and 2 years in prison on the carrying weapons charge. Defendant's sentence was discharged on September 2, 2004.

On October 9, 2004, while on work release in the 2000 and 2001 third degree burglary cases, Defendant was charged with voluntary absence (escape). The charge was later dismissed.

On January 25, 2005, while on escape status from work release, Defendant was charged and later convicted of interference with official acts causing bodily injury. On April 8, 2005, Defendant was sentenced to 2 years in prison. His sentence was discharged on March 1, 2006. Also on January 25, 2005, Defendant was charged with harassing a public officer or employee. The charge was later dismissed.

On July 17, 2006, while on parole in the 2000 and 2001 third degree burglary cases, Defendant was charged and later convicted of delivery of cocaine. On December 18, 2006, Defendant was sentenced to 10 years in prison. On November 4, 2009, he was placed on work release. On January 1, 2010, he was paroled.

On September 11, 2010, while on parole in the 2000 and 2001 third degree burglary cases and 2006 delivery of cocaine case, Defendant was charged in two counts with possession of a firearm as a felon and carrying weapons.[4] This matter remains pending in State court.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case,

---

[4] These charges involve the conduct alleged in the instant Indictment.

Defendant is charged with being a felon in possession of a firearm, one of the offenses found in § 3142(f)(1). Also, the Government alleges a serious risk of flight.

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with being a felon in possession of a firearm. The weight of the evidence against Defendant is strong. It is

undisputed that Defendant is a convicted felon. There is also substantial evidence that on September 11, 2010, Defendant drove a vehicle containing a handgun, handled the handgun, and admitted to a Black Hawk County Deputy Sheriff that a handgun was under the driver's seat of his vehicle. Deputies found a handgun under the driver's seat of Defendant's car.

Defendant has a considerable history of committing crimes while on release on bond, probation, and parole. Significantly, Defendant committed the underlying charges in the instant Indictment while on parole. Defendant also has failed to appear for court proceedings, escaped while on work release, and absconded while on parole. Therefore, having considered all the facts and circumstances, the Court has no confidence that Defendant would comply with any terms or conditions of pretrial release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (March 21, 2011) to the filing of this Ruling (March 24th, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 24th day of March, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA